UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAMMY LYNN DONALDSON

                          Plaintiff,

v.                                        **DECISION AND ORDER**
                                                        12-CV-528S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                          Defendant.

1. Plaintiff, Tammy Donaldson, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Donaldson alleges that she has been disabled since August 24, 2009.

2. Donaldson, alleging disability due to back pain resulting from a car accident and asthma, filed an application for Supplemental Security Income and Disability Insurance Benefits on January 22, 2010. The Commissioner of Social Security ("Commissioner") denied her application, and as result, she requested an administrative hearing. She received that hearing before ALJ Bruce R. Mazzarella on August 30, 2011. The ALJ considered the case *de novo*, and on September 15, 2011, issued a decision denying Donaldson's application. Donaldson filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on June 6, 2012, challenging Defendant's final decision.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin will be substituted for former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2] The ALJ's September 15, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3.     On December 21, 2012, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Donaldson followed suit on December 26, 2012. For the following reasons, the Commissioner's motion is granted and Donaldson's motion is denied.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference,

and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings: (1) Donaldson has not engaged in substantial gainful activity since her alleged onset date (R. 21);[3] (2) Donaldson suffers from two severe impairments, namely chronic back pain and asthma (id.); (3) Donaldson does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) she retains the residual functional capacity ("RFC") to lift and carry up to 10 pounds, sit for an eight-hour work day with normal breaks, and stand and walk for up to two hours of an eight-hour workday, but she should avoid exposure to high concentrations of dusts, fumes, gases, and odors (R. 22); and last (5) Donaldson has past relevant work as a data entry clerk that she is able to perform (R. 25). Ultimately, the ALJ concluded that Donaldson was not under a disability as defined by the Act from her onset date through the date of the decision. (R. 25.)

9. Donaldson, 27 years old at the time of the hearing, raises four challenges to the ALJ's decision: First, she argues that the ALJ erred by not classifying her obesity as a severe impairment. Second, she contends that the ALJ erred by improperly evaluating treating source opinions. Third, she maintains that the ALJ improperly evaluated her credibility. And last, she maintains that the ALJ erred when he found that she could perform past relevant work. Each argument will be discussed in turn.

10. Donaldson is 5'5" tall and weighs 248 pounds. Donaldson argues that the Commissioner's failure to consider this fact at step two of his analysis "permeated the RFC, credibility [determination] and ultimately [the] step four conclusion that [she] could perform past relevant work." (Pl.'s Br. at 8; Docket No. 11-1.)

---

[3]Citations to the underlying administrative record are designated "R."

As an initial matter, Donaldson points to no evidence suggesting that her obesity should be considered a severe impairment. And this Court must be "[m]indful that a lack of evidence of severe impairment constitutes substantial evidence supporting a denial of benefits." Martin v. Astrue, 337 F. App'x 87, 89 (2d Cir. 2009) (rejecting contention that obesity should have been considered a severe impairment because plaintiff's obesity was mentioned "only four times" and there was "no evidence of a severe impairment limiting work ability").

In any event, as Donaldson concedes, "When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." Yablonski v. Comm'r of Soc. Sec., No. 6:03–CV–414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan.31, 2008) (Treece, M.J.). Here, ALJ Mazzarella did not explicitly consider the effects of obesity, but he recounted the findings of consultive examiner Kathleen Kelley, M.D., who concluded that Donaldson suffered from obesity. There can be no dispute that the ALJ was aware of her weight. Indeed, the ALJ's ultimate conclusion aligns with the limitations described by Dr. Kelley, and he assigns Donaldson an RFC that is essentially limited to sedentary work. Remand is therefore not warranted. See, e.g., McKevitt v. Astrue, No. 11-CV-970, 2012 WL 4480621, at *9 (N.D.N.Y. Sept. 26, 2012) (where obesity was referenced in the record and where ALJ finds that the plaintiff could perform only sedentary work, the ALJ did not err by failing to conduct an explicit analysis considering effects of obesity).

11. This Court also finds no error in the ALJ's analysis of the treating source opinions. Donaldson contends that the ALJ's analysis was in error first because he did not consider the observations of Dr. Steven R. Caprow, a treating chiropractor. She argues

that the ALJ "does not appear to have indicated the weight given to Dr. Caprow's opinion" and that his "opinion was in keeping with that of treating physician Dr. Matteliano, who consistently found Donaldson to have a 'total disability.'" (Pl.'s Br. at 13.) Donaldson thus relies primarily on Dr. Caprow's determination that she is disabled. But that decision is reserved for the Commissioner. See SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. 1996) (whether an individual is "disabled" under the Act is not a medical issue but is an administrative finding that is dispositive of a case). And this court finds that the treatment notes and other documentation submitted by Dr. Caprow, including any limitation in the degree to which Donaldson can bend, do not materially conflict with the ALJ's ultimate assessment.

12. ALJ Mazzarella assigned "less weight" to the opinion of Donaldson's treating physician, Dr. Matteliano, who found Donaldson to be temporarily totally disabled. (R. 25, 304–305.) This Court finds no error in that conclusion. Again, the disability determination is the prerogative of the Commissioner. In making this determination, an ALJ may "rely on what the [medical] record says, but also on what it does not say." Johnson v. Astrue, No. 09 Civ. 6017(RMB)(JCF), 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).) Here, the medical evidence on record does not support Donaldson's claim that the ALJ erred. And there are no inconsistencies or gaps in the record triggering the ALJ's duty to recontact Dr. Matteliano. See Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2009) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.").

13. Donaldson next argues that the ALJ improperly evaluated her credibility. "The

6

ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). A claimant testimony is only credited to the extent that alleged limitations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4)).

Here, ALJ Mazzarella clearly considered the medical evidence, Donaldson's activities of daily living, and her sparse work record in determining that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." (R. 22–23.) This Court finds no error in that determination.

14. Last, Donaldson argues that the ALJ erred when he found that she could perform her past work as a data entry clerk. Donaldson contends that "it has not been established" that Donaldson has past relevant work. To support this argument she points to her earning records, which demonstrate that she made roughly $10,000 per year in 2009. She contends that this might not amount to "substantial gainful activity" under 20 C.F.R. § 416.974. Based on that regulation, earnings of $980.00 per month demonstrate that the claimant engaged in substantial gainful activity.

But, as the Commissioner argues, Donaldson had earnings in the 2009 year for less than nine months, and therefore her monthly earnings exceed $1,000 per month.

Donaldson also argues that the ALJ failed to properly evaluate the conditions and circumstances of her past work. But "the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original).

7

Thus, it was not reversible error for the ALJ to rely on the general duties of a data entry clerk as set out in the Dictionary of Occupational Titles – as opposed to her actual duties – in finding that she could perform the job.

Regardless, even if the ALJ had proceeded to step five and used the Medical-Vocational guidelines, he still would have found that Donaldson was not disabled. The ALJ found that Donaldson could "lift/carry up to ten pounds" and "sit for an 8-hour workday with only occasional breaks," and that she could "stand/walk for up to two hours of the day." (R. 22.) This is consistent with the definition of sedentary work, which "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day," Rosa v. Callahan, 168 F.3d 72, 78 n. 3 (2d Cir. 1999), and which also involves "lifting no more than 10 pounds at a time," 20 C.F.R. § 404.1567(a). Accordingly, Donaldson would have been found "not disabled" under the Medical-Vocational Guidelines. See 20 C.F.R. Pt. 404, Subpt. P App. 2, § 201.00(a) ("Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy."); see also Madonia v. Astrue, No. 09-CV-0552 NAM, 2011 WL 2470482, at * 8 (N.D.N.Y. June 2, 2011) ("[B]ecause Plaintiff was found capable of performing unskilled work, the ALJ was not obligated to obtain testimony from a VE. . . .").

The non-exertional limitation that Donaldson should avoid "high concentrations of dusts, fumes, gases, and odors" does not significantly erode the occupational base of sedentary work, and therefore does not trigger the duty to obtain testimony from a vocational expert. See SSR 83–14; Smith v. Astrue, No. 09-CV-1072A, 2011 WL 2728403, at * (W.D.N.Y. July 12, 2011) (ALJ determination that Plaintiff should avoid "environments with concentrated exposure to dust, fumes, and/or other pulmonary irritants" does not eliminate a significant number of Plaintiff's potential employment opportunities).

Accordingly, this final ground for relief is also rejected.

15. This Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence; it will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.11) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: November 3, 2013
        Buffalo, New York

                           /s/William M. Skretny
                           WILLIAM M. SKRETNY
                           Chief Judge
                           United States District Court